1

2

3

4

5

6

7

8               IN THE UNITED STATES DISTRICT COURT FOR THE

9                     EASTERN DISTRICT OF CALIFORNIA

10

11   DARRELL L. DIETLE,                    2:06-cv-02276-ATG (HC)

12          Petitioner,                    ORDER DENYING PETITION FOR WRIT
                                           OF HABEAS CORPUS
13      vs.
                                           (DOCUMENT # 61)
14   JAMES A. YATES,

15          Respondent.

16   _____/

17        Petitioner is currently in the custody of the California Department of Corrections

18   pursuant to a judgment of the Superior Court of the State of California, in and for the County of

19   Shasta, committing him to state prison for numerous offenses involving methamphetamine.  A

20   jury convicted petitioner of manufacturing methamphetamine, possession, possession for sale,

21   transportation, and possession of ephedrine and pseudoephedrine with intent to manufacture

22   methamphetamine (CAL. HEALTH & SAFETY CODE §§ 11377(a), 11378, 11379, 11379.6(a),

23   11383(c)(1); counts 1-3, 10, 11), and found that he was armed while manufacturing

24   methamphetamine (CAL. PENAL CODE § 12022(c)).[1]  The jury also convicted petitioner of

25   possession of a short-barreled shotgun, two counts of possession of a firearm by a convicted

26   felon, possession of ammunition by a convicted felon, and receiving stolen property (§§ 496(a),

27   _____

28        [1]Further section references are to the California Penal Code, unless otherwise specified.

-1-

PDF created with pdfFactory trial version www.pdffactory.com

PDF created with pdfFactory trial version www.pdffactory.com

1    12020(a), 12021(a)(1), 12022(c), 12316(b)(1); counts 4-8.).  The trial court found defendant

2    had a prior serious felony conviction (§ 1170.12) and had served a prior prison term (§

3    667.5(b)).  (Answer at 4).[2]

4         The trial court sentenced petitioner to 27 years, four months in state prison.  He was

5    sentenced to consecutive terms of one year, four months each for his convictions for possession

6    of a short-barreled shotgun (§ 12020(a); count 4), for possession of ammunition by a convicted

7    felon (§ 12316(b)(1); count 7), and for one of his convictions for possession of a firearm by a

8    convicted felon (§ 12021(a)(1); count 5 [a revolver]).  The court imposed a concurrent six-year

9    term for defendant's other conviction for possession of a firearm by a convicted felon (count 6

10   [the shotgun]) and a five-year enhancement for his being armed in the commission of the offense

11   of manufacturing methamphetamine (§ 12022(c); count 1).  (Answer at 4-5).

12        Petitioner filed an appeal in the California Court of Appeal.  On October 3, 2005, the

13   court modified the judgment by staying, pursuant to Section 654, the sentences imposed on

14   counts 4, 5, 6, and 7.  The court affirmed the judgment in all other respects.  On December 21,

15   2005, the California Supreme Court denied petitioner's Petition for Review.  (Answer at 5).

16        Petitioner first filed a habeas petition in this Court on October 16, 2006.  After filing

17   several amended petitions in 2007, petitioner filed the final amended petition for writ of habeas

18   corpus (Docket # 49) on January 22, 2008.  This court has jurisdiction under 28 U.S.C. § 2254.

19                              **FACTUAL BACKGROUND**[3]

20        On March 4, 2002, Officer Jeff Wallace stopped petitioner's car for Vehicle Code

21   violations and learned that the passenger, Crystal Oyoque, was wanted on an outstanding arrest

22   warrant.  After summoning another patrol unit to assist him, Wallace arrested Oyoque, searched

23   her, and found a pager and a knife in her pocket.

24   _____

25        [2]Citations to the Answer refer to the State's September 17, 2007 Answer to Amended
26   Petition for Writ of Habeas Corpus (Docket # 44), unless otherwise specified.

27        [3]The facts are derived from the factual summary set forth by the California Court of
     Appeal in its opinion of October 3, 2005 and presumed correct.  28 U.S.C. §§ 2254(d)(2), (e)(1);
28   *Cook v. Schriro*, 516 F.3d 802, 808 n.1 (9th Cir. 2008).

-2-

PDF created with pdfFactory trial version www.pdffactory.com

PDF created with pdfFactory trial version www.pdffactory.com

1    Officer Wallace then told petitioner that he needed to search the interior of the car
2    incident to Oyoque's arrest.  When petitioner got out of the car, Wallace said he needed to be
3    searched for weapons because he was wearing a large lock-blade knife and Wallace wanted to
4    make sure he had no other weapons.  Petitioner resisted and was placed under arrest for
5    violating Section 148, for obstructing an officer in the discharge of his duties.

6    A search of petitioner incident to his arrest revealed that he possessed a plastic baggie
7    containing five other baggies of methamphetamine in his pants pocket.  In petitioner's car,
8    Officer Wallace found a digital pager and a cellular telephone; the word "trouble" was on the
9    digital display of the telephone, indicating to Wallace that someone was trying to alert someone
10   else of a problem due to contact with the police.

11   Officer Wallace reasoned that petitioner possessed the methamphetamine for sale
12   because (1) it was packaged in individual baggies, each weighing approximately a quarter of an
13   ounce, a common street sale amount; (2) drug dealers commonly use cell phones and pagers to
14   communicate with drug buyers; and (3) drug dealers commonly possess knives and weapons to
15   protect themselves.

16   Later that day, in a search of petitioner's residence pursuant to a search warrant, officers
17   seized a box of pseudoephedrine tablets, a plastic bottle containing red phosphorus, rock salt, a
18   paper that appeared to have "pay-and-owe" information on it, plastic funnels, jars, a scale, the
19   chemical Xylol, glass containers with a bi-layered liquid, and other indicia of the manufacturing
20   process.  All of these items were consistent with the manufacturing and sale of
21   methamphetamine.

22   In addition, officers found a loaded shotgun under petitioner's mattress, a loaded .38
23   revolver handgun and drugs in his dresser, and a stolen motorcycle.

24   **LEGAL STANDARD OF REVIEW**

25   The instant petition is reviewed under the provisions of the Antiterrorism and Effective
26   Death Penalty Act which became effective on April 24, 1996.  *Lockyer v. Andrade*, 538 U.S. 63,
27   70 (2003).  Under the AEDPA standard, a habeas petition cannot be granted unless the state
28   court decision was (1) "contrary to, or involved an unreasonable application of, clearly

-3-

PDF created with pdfFactory trial version www.pdffactory.com
PDF created with pdfFactory trial version www.pdffactory.com

1  established Federal law, as determined by the Supreme Court of the United States," or (2)

2  "based on an unreasonable determination of the facts in light of the evidence presented in the

3  State court proceeding."  28 U.S.C. § 2254(d)(1)-(2).  The term "clearly established Federal

4  law" refers to the holdings of the Supreme Court and not dicta.  *Carey v. Musladin*, 549 U.S.

5  70, 74 (2006).  "What matters are the holdings of the Supreme Court, not the holdings of lower

6  federal courts."  *Plumlee v. Masto*, 512 F.3d 1204, 1210 (9th Cir. 2008) (en banc).  A state

7  court decision is "contrary to" clearly established Supreme Court precedent if the decision

8  "contradicts the governing law set forth in our cases."  *Williams v. Taylor*, 529 U.S. 362, 405

9  (2000).  A state court decision will constitute an "unreasonable application" of federal law "if

10  the state court identifies the correct governing legal rule from this Court's cases but

11  unreasonably applies it to the facts of the particular state prisoner's case."  *Id.* at 407.  A federal

12  court may not issue the writ simply by concluding in its independent judgment that the state

13  court applied federal law incorrectly.  *Id.* at 411.  "An '*unreasonable* application of federal law

14  is different from an *incorrect* application of federal law.'"  *Woodford v. Visciotti*, 537 U.S. 19,

15  25 (2002) (quoting *Williams*, 529 U.S. at 410).

16       Petitioner has the burden of establishing that the decision of the state court is contrary to

17  or involved an unreasonable application of Supreme Court precedent.  *Baylor v. Estelle*, 94 F.3d

18  1321, 1325 (9th Cir. 1996).  Although only Supreme Court law is binding on the states, Ninth

19  Circuit precedent remains relevant persuasive authority in determining whether a state court

20  decision is objectively unreasonable.  *See Duhaime v. Ducharme*, 200 F.3d 597, 600-01 (9th

21  Cir. 1999).

22       AEDPA requires that we "give great deference to the state court's factual findings."

23  *Jeffries v. Wood*, 114 F.3d 1484, 1499 (9th Cir. 1997) (en banc).  The state court's factual

24  findings are presumed correct.  28 U.S.C. § 2254(e)(1).

25                                **DISCUSSION**

26       The petition raises the following four grounds for relief: (1) petitioner's conviction was

27  "secured by the use of evidence secured in violation of the Fourth Amendment"; (2) the traffic

28  stop "exceeded constitutional bounds absent extraordinary circumstances in violation of the

-4-

PDF created with pdfFactory trial version www.pdffactory.com
PDF created with pdfFactory trial version www.pdffactory.com

1   Fourth Amendment"; (3) the prosecutor "failed to establish that petitioner's prior assault

2   conviction was a serious and violent felony with use of a deadly weapon and/or infliction of

3   great bodily injury"; and (4) the "two strike sentence must be set aside due to recent case law."

4   (Am. Pet. at 5, 11).

5          The exhaustion doctrine requires a petitioner to provide the state court with the

6   opportunity to rule on the federal aspect of each claim prior to bringing it into federal court.  *See*

7   *Baldwin v. Reese*, 541 U.S. 27, 29 (2005); *Fields v. Waddington*, 401 F.3d 1018, 1020-21 (9th

8   Cir. 2005).  Petitioner has exhausted these claims.  (June 3, 2008 Answer (Docket # 56) at 2).

9   **I. The Fourth Amendment Claims**

10         Challenging the state court's denial of petitioner's motion to suppress the evidence

11  obtained during the traffic stop and subsequent search of his residence, petitioner claims that his

12  "conviction was secured by the use of evidence secured in violation of the Fourth Amendment."

13  (Am. Pet. at 5).  Petitioner also claims that "the traffic stop exceeded constitutional bounds

14  absent extraordinary circumstances in violation of the Fourth Amendment."  (*Id.*).

15         The Supreme Court has held that "where the State has provided an opportunity for full

16  and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal

17  habeas corpus relief on the ground that evidence obtained in an unconstitutional search or

18  seizure was introduced at his trial."  *Stone v. Powell*, 428 U.S. 465, 494 (1976) (footnotes

19  omitted); *Gordon v. Duran*, 895 F.2d 610, 613 (9th Cir. 1990).

20         Here, petitioner made a motion to suppress evidence and a motion to quash the search

21  warrant.  (Am. Pet. Exh. A, C).  A suppression hearing was held at which Officer Wallace

22  testified.  (Am. Pet. Exh. D, E).  After hearing the arguments of the State and petitioner, the trial

23  court denied the motion to suppress.   The California Court of Appeal carefully considered

24  petitioner's challenge to the denial of the motion to suppress, and affirmed the trial court's ruling.

25

26         Petitioner had an opportunity for full and fair litigation of his Fourth Amendment claim

27  in the state courts.  Accordingly, *Stone* bars this Court "from considering on collateral review

28  whether the state court erred in ruling that the search was lawful."  *Stephens v. Attorney Gen.*,

-5-

PDF created with pdfFactory trial version www.pdffactory.com

PDF created with pdfFactory trial version www.pdffactory.com

1   23 F.3d 248, 249 (9th Cir. 1994).

2   **II. The Two-Strike Sentence**

3        Petitioner claims that the "prosecutor failed to establish that petitioner's prior assault

4   conviction was a serious and violent felony with use of a deadly weapon and/or infliction of

5   great bodily injury." (Am. Pet. at 11). Petitioner maintains that it was error for the trial court to

6   find that the prior conviction was a strike under Section 667.5(c)(8) (defining "violent felony"

7   for purposes of sentencing enhancements as "[a]ny felony in which the defendant inflicts great

8   bodily injury on any person other than an accomplice . . .") and Section 1192.7(c)(23) (defining

9   "serious felony" for purposes of limitations on plea bargains

10   as "any felony in which the defendant personally used a dangerous or deadly weapon") where

11   the "[a]djudicated elements for the prior at issue do not include personal, as opposed to

12   vicarious, use . . ." (Am. Pet. at 14.) Relying on *People v. Rodriguez*, 17 Cal.4th 253, 261-62

13   (1998), and *People v. Equarte*, 42 Cal.3d 456, 465 (1986), petitioner asserts that a violation of

14   Section 245 is not a serious felony unless the prosecution proves that the accused personally

15   used a dangerous or deadly weapon to commit the assault. According to petitioner, merely

16   proving that the accused committed the offense by means of force likely to cause great bodily

17   injury, or by aiding and abetting another offender who personally used a deadly weapon, is

18   insufficient. Petitioner is mistaken.

19        The Supreme Court has held that, in the habeas context, "the relevant question is

20   whether, after viewing the evidence in the light most favorable to the prosecution, any rational

21   trier of fact could have found the essential elements of the crime beyond a reasonable doubt."

22   *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). In § 2254 proceedings, sufficiency of the

23   evidence claims must be measured with "explicit reference to the substantive elements of the

24   criminal offense as defined by state law." *Jackson*, 443 U.S. at 324 n.16; *Panther v. Hames*,

25   991 F.2d 576, 581 (9th Cir. 1993). Under the AEDPA, a federal court may not grant a habeas

26   petition unless it finds that the state court unreasonably applied the principles underlying the

27   *Jackson* standard when reviewing the petitioner's claim. *See Juan H. v. Allen*, 408 F.3d 1262,

28   1274 n.12 (9th Cir. 2005); *Jones v. Wood*, 114 F.3d 1002, 1013 (9th Cir. 1997) (en banc)

PDF created with pdfFactory trial version www.pdffactory.com
PDF created with pdfFactory trial version www.pdffactory.com

1   (recognizing that "unreasonable application" standard applies to insufficient evidence claim).

2          Petitioner made the same argument regarding the prior assault conviction in his direct

3   appeal to the California Court of Appeal.  That court rejected petitioner's claim:

4          Defendant overlooks that *Rodriguez* and *Equarte* were decided prior to the
           passage of Proposition 21 in the March 7, 2000, Primary Election. "Among the
5          effects of Proposition 21 was the adoption of *Penal Code section 1192.7,
           subdivision (c)(31)*, which deletes for serious felony purposes the personal use
6          requirement for assault with a deadly weapon. *Penal Code section 1192.7,
           subdivision (c)(31)* states: 'As used in this section, "serious felony" means any of
7          the following: [P] . . . (31) assault with a deadly weapon, firearm, machinegun,
           assault weapon, or semiautomatic firearm or assault on a peace officer or
8          firefighter, in violation of *Section 245* . . . .' (See Ballot Pamp., Primary Elec.
           (Mar. 7, 2000) text of Prop. 21, § 17, pp. 124-125.) As can be noted, *Penal
9          Code section 1192.7, subdivision (c)(31)* merely requires that the accused
           previously have been convicted of 'assault with a deadly weapon . . . in violation
10         of *Section 245*.' There is no requirement that the accused *personally* use the
           deadly weapon as in *Penal Code section 1192.7, subdivision (c)(8) and (23)*."
11         (*People v. Luna (2003) 113 Cal.App.4th 395, 398*, orig. italics.)

12         The complaint underlying defendant's prior conviction charged him as follows:
           "COUNT 2. [P] ASSAULT GBI AND WITH DEADLY WEAPON, in violation
13         of *Section 245(a)(1) of the Penal Code*, a FELONY. [P] On or about January 17,
           1992, the Defendant did willfully and unlawfully commit an assault upon
14         ROXANNE DIETLE with a deadly weapon, to wit, SHOVEL, and by means of
           force likely to produce great bodily injury." There is no indication in the charging
15         document that defendant was aiding and abetting an accomplice.

16         Defendant pled guilty to count 2 pursuant to a plea agreement. By doing so, he
           admitted that the assault was committed as charged, which included by means of
17         a deadly weapon. (*People v. Davis*, (1996) 42 Cal.App.4th 806, 814; *People v.
           Tuggle* (1991) 232 Cal. App. 3d 147, 154-155, 283 Cal. Rptr. 422, disapproved
18         on another point in *People v. Jenkins* (1995) 10 Cal.4th 234, 250, fn. 9.) This is
           sufficient to support the trial court's finding that he was convicted previously of a
19         serious felony. ( § 1192.7, subd. (31).)

20  *People v. Dietle*, 2005 Cal. App. Unpub. LEXIS 9038, **38-40 (Cal. App. 3d Dist. 2005)

21  (ellipses in original).

22         The State established that petitioner was convicted in 1992 of violating Section

23  245(a)(1), for assault with a deadly weapon and by means of force likely to produce great bodily

24  injury.  The documentary evidence included abstracts of judgment, minute orders, petitioner's

25  change of plea form, and the complaint.  (June 3, 2008 Answer (Docket # 56) at 9).  Together,

26  they were sufficient to support the sentencing enhancement.  The state courts' denials of

27  petitioner's claim concerning the prior assault conviction did not offend *Jackson* or any other

28  Supreme Court precedent.  Nor did the state courts unreasonably determine the facts in light of

-7-

1   the evidence presented.

2   **III. The Aggravated and Consecutive Sentences**

3     Finally, petitioner claims that "the two-strike sentence must be set aside due to recent

4   case law." (Am. Pet. at 11). Petitioner challenges the trial court's imposition of the five-year

5   aggravated term, because, according to petitioner, the aggravating factors did not outweigh the

6   mitigating factors. Petitioner argues that "there is simply insufficient evidence that any jury

7   would have found [the probation report's findings that the crimes he committed involved

8   planning and sophistication] true beyond a reasonable doubt." (Am Pet. at 15). Petitioner

9   argues that there was no evidence that his prior conviction involved violence, and that the record

10  of conviction is limited to the terms of the charging documents and transcript. In sum, petitioner

11  argues that his aggravated and consecutive sentences should be reversed "in order for the trial

12  court to adequately state on the record its reasons for its sentencing choice and to ensure that he

13  was afforded his constitutionally protected jury trial rights as to those sentencing factors used to

14  enhance his sentence beyond the middle term." (Am. Pet. at 15).

15    The Supreme Court has held that "the Federal Constitution's jury-trial guarantee

16  proscribes a sentencing scheme that allows a judge to impose a sentence above the statutory

17  maximum based on a fact, *other than a prior conviction*, not found by a jury or admitted by the

18  defendant." *Cunningham v. California*, 549 U.S. 270, 274-75 (2007) (emphasis added);

19  *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000) ("*Other than the fact of a prior conviction*,

20  any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be

21  submitted to a jury, and proved beyond a reasonable doubt.") (emphasis added).

22    Petitioner made the same sentencing argument in his direct appeal to the California Court

23  of Appeal. Although one basis for the California Court of Appeal's decision was its reliance on

24  *People v. Black*, 35 Cal. 4th 1238 (2005), a case the U.S. Supreme Court overruled in

25  *Cunningham*, 549 U.S. at 292-93, the Court of Appeal set forth an alternative rationale for its

26  decision:

27      In any event, one reason an upper term may be imposed is a defendant's prior
    criminal conviction(s). (*Cal. Rules of Court*, rule 4.421(b)(2).) Here, after

28      defendant waived a jury trial on the enhancements, the trial court specifically

-8-

PDF created with pdfFactory trial version www.pdffactory.com

PDF created with pdfFactory trial version www.pdffactory.com

CASE HEADER

found that defendant had a prior serious felony conviction ( § 1170.12) and had served a prior prison term ( § 667.5, subd. (b)). Having waived a jury trial on the issue of his prior convictions, defendant cannot complain that the court relied on facts not submitted to the jury and proved beyond a reasonable doubt to impose the upper term. And as explained above, the rule of *Apprendi* and *Blakely* does not apply to a prior conviction used to increase the penalty for a crime. Since one valid factor in aggravation is sufficient to expose defendant to the upper term *(People v. Cruz (1995) 38 Cal.App.4th 427, 433)*, the trial court's consideration of other factors, in addition to defendant's prior conviction(s), in deciding whether to impose the upper term did not violate the rule of *Apprendi* and *Blakely*.

*Dietle*, 2005 Cal. App. Unpub. LEXIS 9038, at \*\*35-36 (footnote omitted).  The state court's alternative rationale for the sentencing enhancement is in accord with Supreme Court precedent.

Regarding petitioner's argument that the trial court failed to articulate the factors upon which it relied in enhancing the sentence, the Court of Appeal, considering the same argument, acknowledged that the lower court "simply stated it had read the probation report and found the factors in aggravation outweighed the factors in mitigation." *Id.* at \*36 n.3.  However, the Court of Appeal reasoned that

> [b]ecause defendant did not object to the court's oversight at the sentencing hearing, he has forfeited any claim that the court failed to meet its obligation to state reasons for its discretionary sentencing choices. *(People v. Scott (1994) 9 Cal.4th 331, 353.)* Hence, we shall presume the court impliedly found that the aggravating factors enumerated in the probation report were valid.

*Id.*  Again, petitioner fails to meet his burden to show that the state court's sentencing enhancements were contrary to or involved an unreasonable application of Supreme Court precedent.  Nor did the state court unreasonably determine the facts in light of the evidence presented.

**IV. Ineffective Assistance of Counsel**

The final Amended Petition does not raise an ineffective assistance of counsel claim, although the State's September 17, 2007 Answer (Docket # 44) to two previous Amended Petitions (Docket # 33, 38) rebuts this claim.  Even if the claim were properly before this Court, it would fail.

The Supreme Court has held that to succeed on a claim of ineffective assistance of counsel, defendant must show that counsel's performance was both deficient and prejudicial in

-9-

PDF created with pdfFactory trial version www.pdffactory.com
PDF created with pdfFactory trial version www.pdffactory.com

1    the sense that it "so undermined the proper functioning of the adversarial process that the trial

2    cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668,

3    686 (1984).  A court may reject a claim of ineffective assistance of counsel, without deciding

4    whether counsel's performance was deficient, if defendant fails to show that the challenged

5    actions by counsel affected the reliability of the trial process. *Id.* at 697.  "If it is easier to

6    dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we

7    expect will often be so, that course should be followed." *Id.*

8           The California Court of Appeal previously addressed petitioner's claim:

9           While cross-examining a witness at trial, defense counsel played portions of a
10          dispatch tape, which concerned the probation status of the female passenger who
            was with defendant during the traffic stop. In the tape, the dispatcher indicated
            defendant was a "290 registrant for a 647.6." This comment was a reference to
11          the fact that defendant had to register as a sex offender under section 290 based
            on a conviction for annoying or molesting a child in violation of section 647.6.
12          The trial court noted the error was invited, the tape was difficult to hear, and it
            was highly unlikely the jury heard or understood the reference to defendant's
13          section 290 status. Thereafter, the parties agreed to redact the tape recording to
            delete any reference to defendant's section 290 status before the jury received the
14          tape.

15          Defendant's claim of error is defeated by the trial court's factual finding that it
            was highly unlikely that the jurors heard the passage challenged by defendant.
16          Moreover, we conclude, as did the trial court, that it is not reasonably probable
            that the jurors were familiar with the meaning of the aforesaid Penal Code
17          sections and knew they meant that defendant was a registered sex offender.
            Defendant simply speculates the jury might have understood this inference, which
18          is not sufficient to establish prejudice. (*People v. Fairbank (1997) 16 Cal.4th
            1223, 1241* [a defendant's proof of prejudice must be a "demonstrable reality,"
19          not simply speculation].)

20   *Dietle*, 2005 Cal. App. Unpub. LEXIS 9038, at **26-27.  The state courts' rulings were not

21   contrary to, or involve an unreasonable application of, Supreme Court precedent.

22   //

23   //

24   //

25   //

26   //

27          Accordingly, the petition for writ of habeas corpus is DENIED.

28

-10-

1   Dated:          December 11, 2008

2

3                                                       /s/ Alfred T. Goodwin

4                                                       _____
                                                        ALFRED T. GOODWIN.
5                                                       United States Circuit Judge
                                                        sitting by designation
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PDF created with pdfFactory trial version www.pdffactory.com

PDF created with pdfFactory trial version www.pdffactory.com